Daniels, J.
The relator was charged with improperly conducting herself as a teacher in the course of the examination of one of her female pupils named Ella Luyster. It was alleged that she had discriminated against the pupil in such a manner as to obtain an improper result of the school examination and thereby exclude her from that promotion which it was insisted she was entitled to for the progress she had made in her studies. The relator denied this as well as all other charges of misconduct, and an investigation took place before a committee appointed for that purpose as to the truth of the charges made against the relator. The final result of the investigation of the committee has been stated in their report in the following manner :
“But more serious matters transpired upon the second hearing.
*748 For the purpose of ascertaining the truth of the charge that Mr. Luyster’s child had failed to receive promotion, though deserving it, your committee requested the city superintendent to have the entire class examined, and each child marked. It was upon the reported result of this examination that the committee’s former report was founded.
It appeared upon the second hearing before the committee, that on the day fixed for the examination, the city superintendent attended the school, and directed Miss Hoffman not to interfere with the class in any way while the examination was going on.
Disregarding this admonition, Miss Hoffman entered the class-room, and during the temporary absence of the examiner, Assistant Superintendent McMullin, changed the seat of Mr. Luyster’s daughter (her usual place being in the rear of the room), and caused her to sit in one of the front seats. At the same time she instructed the teacher of the class to maintain a strict watch over the girl.
The object of the examination was defeated.
Even had no direction been given by the city superintendent common fairness dictated that nothing should be done to intimidate the child for whose sake the examination was taking place to render her nervous, or cause her to lose her self-possession. It was for this reason that Miss Hoffman was directed to leave the class entirely in the charge of the examiner.
The course pursued by her was calculated to frustrate the purpose of the committee, which was to ascertain the fitness of the girl for promotion. As the case stands,- we know but little more than we did before, because it is claimed by Mr. Luyster and his daughter, and we believe it to be the fact, that the change of position made by Miss Hoffman, and the close espionage of the class teacher (which was so marked as to be noticed by the examiner, who did not know which member of the class was interested in the result), agitated and confused the child to such an extent that she was unable to do justice to herself.
The effect of all this was that she was found not qualified for promotion.
Miss Hoffman’s excuse for interfering is that she had known the girl to copy from other children, and wished to prevent her from doing so on this occasion. The examiner was perfectly competent to detect anything of this kind, but, at all events, Miss Hoffman had received positive directions from the city superintendent to have nothing to do with the examination.
The committee consider this conduct deserving of severe censure, and propose the following resolution for adoption:
*749 Resolved, That Miss Annie M. Hoffman, principal of F. D. No. 69, be fined fifteen days’ pay for disobeying the instructions of the city superintendent.
Eugene H. Pomeroy, ) Committee Gilbert H. Crawford, V on William Wood, ) Teachers.”
The information they obtained, as well from the relator as from the pupil herself and otherwise, was sufficient to entitle them to consider the facts reported by them as being proved. It was true there was a conflict in the statements made to them, but to a great extent the relator herself conceded her intervention in the proceedings for the final examination, which the committee by their report deemed it to be their duty to condemn. When that is the state of the evidence that may be given, the action of the board or officers to which it may be addressed are entitled to make their decision upon it, as it may strike their minds, and justify what they may believe to be correct conclusions to be drawn from it. People v. Board of Police Commissioners, 93 N. Y., 97; People v. Board of Fire Commissioners, 96 id., 644.
And the result cannot be set aside or reversed by a review of the proceedings obtained by means of the writ of certiorari. It must therefore be assumed that the facts were as the committee reported them to be, and as they were acted upon by the board to which the report was made.
It has been contended by the counsel for the relator that the board had no authority to make the decision which they did, even though these facts may have been reasonably well established. But the board has been invested with “full control of the public schools and the public school system of the city, subject only to the general statutes of the state upon education.” Chap. 410, Laws of 1882, §§ 1022, 1026.
Neither their proceedings nor the authority exercised by them appear to be in contravention of any statutory provisions of the state upon the subject of education. And as the board has, subject only to this qualification, been given full control over the public schools and school system of the city, the power exercised by it appears to be within this delegation of authority. It was a part of the discipline which in their judgment might be applied to punish and correct the conduct forming the subject of the complaint in the case. In this right the authority of the board has been created in very general terms, including all that may be necessary for the government of the schools and the control and management of the teachers employed therein.
*750 It has been claimed that the power to proceed was vested wholly in the trustees, but that which has been given to this class of officers is entirely consistent with the existence of the very broad authority vested in the bord of education. Without, therefore, determining whether a writ of certiorari may be issued to obtain a review of these proceedings, it is sufficient to say that there is no legal ground upon which the court can interfere with what has been done or the result that was declared. The proceedings were carried on with great deliberation and care, being postponed from time to time, and thoroughly considered by the board, and they should be affirmed, but as the circumstances are peculiar, justice will probably be best promoted by directing the affirmance, without costs.
Davis, P. J., and Brady, J., concur.